# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LACY JO TUBBY,                  )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No. CIV-14-280-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Lacy Jo Tubby (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on December 25, 1978 and was 35 years old at the time of the ALJ's latest decision. Claimant obtained her GED. Claimant has worked in the past as a press operator, store clerk, waitress, and packer at a cracker factory. Claimant alleges an inability to work beginning November 22, 2005 due to limitations resulting from back and leg pain.

## Procedural History

On March 3, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on October 18, 2008, finding Claimant was not under a disability. On August 24, 2010, this Court reversed the decision and remanded the case for further proceedings.

On June 9, 2011, an second administrative hearing was held before an ALJ. On August 11, 2011, the ALJ issued another unfavorable decision on Claimant's application. The Appeals Council denied review of the decision. The decision was reversed and the case remanded by this Court on March 28, 2013.

On January 23, 2014, a third administrative hearing was held before ALJ Doug Gabbard, II. On April 18, 2014, the ALJ determined Claimant was again not disabled. The Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential

evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly assess Claimant's RFC; and (2) finding Claimant could perform jobs at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity and lumbar degenerative disc disease. After June 13, 2008, Claimant suffered from the additional severe impairments of depression, anxiety, and substance abuse disorder in remission. (Tr. 639). The ALJ found that prior to June 13, 2008, Claimant retained the RFC to perform a full range of light work with some limitations. In so doing, the ALJ determined Claimant could occasionally 20 pounds and frequently lift/carry 10 pounds; could stand/walk for six hours in an eight hour workday and sit for six hours in an eight hour workday. Claimant was found to be able to frequently balance and crouch, but only occasionally climb, stoop, kneel, and crawl. The ALJ found Claimant would need to be allowed to alternately sit and stand every 15 minutes or so throughout the workday for the purpose of changing positions, but

without leaving the workstation. Beginning June 13, 2008, however, the ALJ found additional limitations of being able to perform unskilled work but must only occasionally be required to understand, remember, and complete detailed tasks, because Claimant had marked limitations in this area. Claimant's supervision was found to need to be simple, direct, and concrete, anc interpersonal contact with supervisors and co-workers would need to be incidental to the work performed. The ALJ cited the example of assembly work, but not at production line speeds. Claimant could only have occasional contact with the general public. (Tr. 645).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of ticket seller and cutter and paster, which the ALJ found existed in sufficient numbers in both the regional and national economies. (Tr. 659). As a result, the ALJ found Claimant was not disabled prior to June 13, 2008. Id. After that date, the ALJ determined that the jobs of cutter and paster and final assembler existed in sufficient numbers to conclude Claimant was not disabled. (Tr. 660-61).

Claimant contends the ALJ did not properly determine her RFC. Claimant first asserts the ALJ erred in failing to include her severe mental impairments and the associated limitations in her RFC

6

prior to June 13, 2008. Claimant cites to the report of Dr. Diane Brandmiller from May 22, 2006. Dr. Brandmiller diagnosed Claimant with Depressive Disorder, NOS. She noted Claimant's symptoms of weight gain/obesity, hypersomnia, crying, social withdrawal, and low energy. Her short term and long term memories as well as abstract thinking were intact. Claimant also had a tendency to answer questions very rapidly which impaired her performance on some items requiring concentration. She reported a good ability to communicate and interact with others. Claimant stated, however, that she had difficulty adapting to new situations, which made her nervous. (Tr. 211).

On June 13, 2008, Dr. Minor W. Gordon conducted a psychological examination of Claimant. Dr. Gordon acknowledged Dr. Brandmiller's prior report and assessment. He administered the Wechsler Adult Intelligence Scale-III to Claimant and found she earned a verbal score of 89, performance IQ of 81, and a full scale IQ of 85. Her intelligence level was found to be within the average range. (Tr. 354). Administration of the Wide Range Achievement Test-III showed Claimant experienced spelling and arithmetic disorders. The Beck Depression Inventory indicated Claimant earned a total score of 31 which Dr. Gordon interpreted as Claimant being an individual suffering from an extremely severe level of depression. The Beck

Anxiety Inventory showed Claimant earned a score of 36 which was interpreted to indicate that she was an individual suffering from a severe level of anxiety. The Minnesota Multiphasic Personality Inventory-II showed Claimant to be an individual who felt anxious, nervous, tense, high strung, and jumpy. She worried excessively and was vulnerable to real as well as imagined threats. Claimant was depressed, extremely pessimistic, self-conscious, introverted, harbors doubts about her abilities, suspicious of interpersonal relationships, and a diminished ego strength. (Tr. 355). Ultimately, Dr. Gordon diagnosed Claimant with major depression, severe, without psychotic symptoms; generalized anxiety disorder, moderate; spelling disorder, NOS; and reading disorder, NOS. Dr. Gordon scored Claimant with a 55 GAF. (Tr. 356).

The ALJ concluded Dr. Gordon's opinion was entitled to "little weight" because the inventories administered by him included questionnaires completed by Claimant, who the ALJ found to be not credible. He also determined that the treatment notes do not support the level of limitation found by the physician. (Tr. 655). The ALJ's conflicting positions contained in the decision gives this Court pause. The ALJ refers to the state agency psychologists opinions which concluded Claimant did not have a severe mental impairment. The ALJ gave these opinions "great weight" only prior

to "July 13, 2008 because it is well-supported by Dr. Brandmiller's examination and treating notes. . . ." He then states Claimant's mental impairments became severe "as of June 13, 2008" - a date corresponding with Dr. Gordon's report which he afforded "little weight." (Tr. 641). These inconsistencies cannot be endorsed by the Court with an affirmance.

Moreover, the ALJ created a bright line date for the onset of Claimant's severe mental impairment. Soc. Sec. R. 83-20 provides, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e, be decided on medical grounds alone) before onset can be established.
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

The medical record indicates Claimant's mental conditions did not suddenly manifest itself on June 13, 2008. As early as May of 2006, Claimant began suffering from depressive symptoms which

9

limited her functional abilities. Yet, the ALJ decided to designate the date of a report he gave "little weight" to establish Claimant's onset of severe mental impairments.

"In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Soc. Sec. R. 83-20. In determining the onset date of a disability, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." Potter v. Sec. of Health & Human Servs., 905 F.2d 1346,1348-49 (10th Cir. 1990). If the onset date of a disability must be inferred, the ALJ should consult a medical advisor. Soc. Sec. R. 83-20.

While it is often easier to determine the onset date to be the date of diagnosis, "only in the rarest of cases is a person's disabling condition diagnosed on the day it begins." McClellan v. Apfel, 2000 WL 433094, 9 (D. Kan.). This is particularly true of a mental impairment, which is often not diagnosed right away precisely because the impairment itself interferes with the claimant's awareness of the cause of her difficulties. Id. citing Morrison v. Bowen, 738 F.Supp. 1351 (D. Kan. 1987).

The ALJ's designation of an essentially arbitrary date for the onset of Claimant's severe mental impairments constitutes

reversible error. Additionally, the ALJ's rejection of Dr. Gordon's opinion is not supported because the basis for rejection - Claimant's subjective statements - is not sufficient. Necessarily, psychological evaluation is dependent, at least in part, upon a patient's subjective statements. The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective "tests"; those findings "may rest either on observed signs and symptoms or on psychological tests." Thomas v. Barnhart, 2005 WL 2114163, 4 (10th Cir.) citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). Dr. Gordon's conclusions were consistent with his objective testing and observations. The ALJ's rejection of those opinions was not supported by substantial evidence or legal authority. On remand, the ALJ shall re-evaluate Dr. Gordon's opinion as well as the inconsistencies in the decision. Thereafter, the ALJ shall determine whether his RFC assessment should be modified.

Additionally, Claimant contends the ALJ ignored her radiculopathy at L-5. The record does support disc desiccation with minimal disc bulge at L4-L5 and decreased disc height and disc signal with mild diffuse disc bulge and focal disc protrusion into the left foraminal compartment which encroached upon the exiting left L5 nerve root with no definitive effacement. (Tr. 846). The

record supports limitations in Claimant's activities due to pain from these conditions. On remand, the ALJ should consider the records of Claimant's treating physician, Dr. Willis, and evaluate whether these physical conditions in combination with the mental impairments affect the RFC assessment.

### Step Five Analysis

Claimant also contends the ALJ should not have relied upon the testimony of the vocational expert at step five since all impairments and limitations were not considered in the RFC presented to the expert. Since this Court has directed the ALJ to reassess his RFC findings, the hypothetical questioning of the vocational expert shall be reformulated based upon the re-evaluated RFC on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the

court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE